FILED
FEBRUARY 29, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

3002604-RTV

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**08 C 1245**

| | |
|---|---|
| WITCHER CONSTRUCTION COMPANY, a Minnesota corporation, and WEST BEND MUTUAL INSURANCE COMPANY, a Wisconsin corporation,<br>    Plaintiffs,<br><br>v.<br><br>UNITED NATIONAL INSURANCE COMPANY, a Pennsylvania corporation,<br>    Defendant. | No:<br><br>**JUDGE BUCKLO**<br>**MAGISTRATE JUDGE COLE** |

**COMPLAINT FOR DELCARATORY JUDGMENT AND OTHER RELIEF**

Plaintiffs, WITCHER CONSTRUCTION COMPANY ("Witcher"), and WEST BEND MUTUAL INSURANCE COMPANY ("West Bend") by SmithAmundsen LLC, pursuant to 28 U.S.C. §2201 and 2202, for their Complaint for Declaratory Judgment and other relief against Defendant, United National Insurance Company ("United National"), state as follows:

**COUNT I**
**WITCHER AND WEST BEND – DECLARATORY JUDGMENT**

**JURISDICTION**

1.  The jurisdiction of the Court is premised upon 28 U.S.C. §1332 in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

**VENUE**

2.  Venue is premised upon 28 U.S.C. §1391 in that a substantial part of the events or omissions giving rise to this suit occurred in this District.

1

## THE PARTIES

3.      At all times relevant hereto, Witcher was a Minnesota corporation, with its principal place of business located in Eden Prairie, Minnesota. Witcher was a contractor at a Best Buy construction project in Bolingbrook, Illinois at which William Martin was injured, leading to the filing of the *Martin* suit, described below.

4.      At all times relevant hereto, West Bend was a Wisconsin corporation, with its principal place of business located in West Bend, Wisconsin. West Bend issued a certain policy of liability insurance to its named insured, Morris Excavating Co., Pol. No. CPC 0312529, effective 8/15/02 to 8/15/03. Witcher is an additional insured on the West Bend policy, subject to the West Bend policies' terms and conditions. West Bend has provided, and continues to provide, Witcher with a defense in the *Martin* suit, subject to a reservation of rights.

5.      At all times relevant hereto, United National was a Pennsylvania corporation, with its principal place of business located in Bala Cynwyd, Pennsylvania. United National issued a policy of liability insurance to its named insured, Global Fire Protection Company, which later became known as Cybor Fire Protection Co. ("Cybor"), a corporation whose principal office, at all times relevant hereto, was located in Downers Grove, Illinois. Witcher asserts that it is an additional insured on the United National Policy, but United National has denied coverage to Witcher.

## THE *MARTIN* SUIT

6.      On December 22, 2003, William Martin filed a Complaint at Law against Witcher in the Circuit Court of Cook County, Illinois, Law Division, Court No. 03 L

15944 (the "*Martin* suit"). A copy of the Complaint filed in the *Martin* suit is attached hereto as Exhibit A.

7. The Complaint in the *Martin* suit alleges that Martin was a foreman employed by Cybor to install an overhead sprinkler system at a Best Buy store being constructed in Bolingbrook, Illinois.

8. The complaint in the *Martin* suit alleges that Witcher was the general contractor at the Best Buy project.

9. The Complaint in the *Martin* suit alleges that on August 23, 2002 Mr. Martin was injured while walking across a metal plate covering a trench for electrical equipment. Allegedly, one of the metal plates slipped forward, causing his left foot to fall into the trench and his ankle and heel to be injured by a piece of iron.

10. The Complaint in the *Martin* suit alleges that Witcher was negligent by committing one or more negligent acts or omissions, including but not limited to the following:

   d. Failed to appropriately <u>monitor the subcontractors</u> to insure that (they) conducted weekly "tool box meetings" to provide their employees with up-to-date safety information in violation of industry standards jobsite safety procedures;

   e. Failed to <u>insure that the daily business operations of the subcontractors were being conducted in a reasonably safe manner</u> in violation of industry standard jobsite safety procedures;

   f. Failed to initiate and/or participate in periodic inspection tours and <u>failed to insure that the subcontractors initiated and/or participated in periodic inspection</u> tours of the work site, in violation of industry standard jobsite safety procedures; (Underline supplied.)

* * *

3

11. The complaint in the *Martin* suit alleges that as a proximate result of Witcher's negligence Martin sustained damages in excess of $50,000.

12. Witcher denies liability for Mr. Martin's injuries and brings this suit without prejudice to said denial.

## THE WITCHER/CYBOR SUBCONTRACT

13. Witcher issued an "Invitation to Bid" for work at the Best Buy project to potential subcontractors, including Cybor, on July 19, 2002.

14. Cybor submitted a proposal to Witcher for work at Best Buy (in the sum of $55,900) on July 23, 2002.

15. On August 9, 2002, Witcher informed Cybor that it was a low bidder for work at the Best Buy project.

16. On August 15, 2002, Cybor faxed "submittals" to Witcher.

17. On August 19, 2002, Witcher informed Cybor that it had been awarded the fire protection contract for the Best Buy project.

18. On August 20, 2002, Cybor began working at the Best Buy project.

19. On August 21, 2002, Cybor received a copy of the subcontract for its work from Witcher. A copy of the subcontract is attached hereto and labeled Exhibit B.

20. The subcontract between Witcher and Cybor states that it was "made this 21st day of August, 2002," and that it is executed "the day and year first written above."

21. Article 7.1 of the subcontract required Cybor to obtain commercial general liability insurance with "per occurrence" limits of at least $500,000 and excess/umbrella limits of at least $1 million and to name Witcher as an additional insured.

22. The subcontract included a Rider with "Insurance" requirements, including, on page 7, a requirement that "the insurance afforded to the additional insureds on (Cybor's) CGL policy shall be primary insurance over any other valid or collectible insurance that the additional insureds may have with respect to loss under the policy and other insurance of additional insureds applicable to the loss shall be excess over (Cybor's) policies…"

**THE UNITED NATIONAL POLICY AND CERTIFICATE OF INSURANCE**

23. United National issued policy no. L7156303 to "Global Fire Protection Company", with an effective period of May 28, 2002 to May 28, 2003. The United National policy had a general aggregate limit of $2 million and an "each occurrence" limit of $1 million. A copy of the United National Policy's declarations and Endorsement No. 1 are attached hereto as Exhibit C.

24. The Declarations of the United National policy reflect that it includes "blanket additional insured coverage", Form ARF 5536, the terms of which, on information and belief, were set forth by United National in its "Coverage Disclaimer" letter, described below.

25. The United National policy's Insuring Agreement provides in relevant part that United National will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to which the insurance applies, and that United National has the duty to defend any "suit" seeking those damages.

26. The United National policy included, in Endorsement No. 1, the following terms:

> In consideration of the premium charged, it is hereby understood and agreed that the following primary wording will be provided:

5

> The insurance afforded is primary and non-contributory insurance. If the insurance afforded is applicable to a loss on an excess, contingent, or primary basis, the amount of the company's liability under this policy shall not be reduced by the existence of other insurance.

27. On or about August 28, 2002, Witcher was provided with a certificate of insurance by Cybor's insurance producer, showing Witcher as an additional insured on the United National policy. A copy of the Certificate is attached hereto and labeled Exhibit D.

28. The certificate included an attachment stating that Witcher is an additional insured and further stating that:

> General liability endorsement ARF 1048 provides additional insured coverage for those required by written contract or agreement.
>
> Additional insured pertaining to (CGL) solely with respect to liability arising out of the named insured's operations.

\* \* \*

### TENDER OF THE *MARTIN* SUIT TO UNITED NATIONAL

29. By letter dated February 26, 2004, Witcher's defense and indemnity in the *Martin* suit was tendered to Cybor, with a copy of the tender materials also sent to United National.

### UNITED NATIONAL'S COVERAGE DISCLAIMER

30. On March 17, 2004, United National denied coverage to Witcher in a "Coverage Disclaimer" letter, a copy of which is attached hereto as Exhibit E.

31. United National's March 17, 2004 "Coverage Disclaimer" letter set forth the purported terms of its policy's additional insured endorsement as follows:

6

>WHO IS AN INSURED …is amended to include the person or organization shown in the <u>Schedule below</u>, but only <u>as respects liability imposed or sought to be imposed on such additional insured because of an alleged act or omission of the named insured</u>.
>
>1. If liability for injury or damage is imposed or sought to be imposed on the additional insured because of:
>
>   a. Its own acts or omissions, this insurance does not apply;
>
>   b. Its acts or omissions and those of the named insured, <u>as to defense</u> of the additional insured, in proportion to the limits of liability of all involved parties, and the Other Insurance provisions of this policy … are amended accordingly. However, this insurance <u>does not apply to indemnity of the additional insured for its own acts or omissions</u>.
>
>2. If an agreement between the named insured and the additional insured providing indemnity or contribution in favor of the additional insured exists or is alleged to exist, the extent and scope of coverage under this insurance for the additional insured <u>will be no greater than the extent and scope of indemnification of the additional insured which was agreed to by the named insured</u>. (Underline supplied.)

\* \* \*

32. The "Schedule below" referenced in the endorsement is not set forth in the "Coverage Disclaimer" letter. However, on information and belief, the "Schedule below" states "those required by written contract or agreement."

33. United National's "Coverage Disclaimer" asserted there were "serious issues" as to whether there was a subcontract agreement whereby Cybor agreed to provide additional insured coverage to Witcher.

34. United National's "Coverage Disclaimer" letter also asserted that its additional insured endorsement did not provide coverage to Witcher because the *Martin* suit sought to impose liability on Witcher based on Witcher's own acts or omissions,

7

rather than those of Cybor, and that coverage was otherwise barred by the terms of the endorsement.

35. United National's "Coverage Disclaimer" letter asserted that Witcher breached the United National policy's notice conditions.

36. On March 17, 2004, United National also sent a "Coverage Disclaimer" letter to an attorney for Cybor, a copy of which is attached as Exhibit F. This letter reflects that, at its request, United National had been provided with documents and information by Cybor.

37. United National's Coverage Disclaimer letter to Cybor reflected United's awareness that Cybor was provided with a written contract by Witcher on August 21, 2002, prior to the time of Mr. Martin's injury.

## THE WEST BEND ADDITIONAL INSURED ENDORSEMENT

38. West Bend issued policy no. CPC0312529 to "Morris Excavating, Inc.", with an effective period of August 15, 2002 to August 15, 2003.

39. The West Bend policy included an endorsement entitled "Additional Insured – Contractor's Blanket" which provided in relevant part as follows:

**A.    WHO IS AN INSURED (Section II)** is amended to include as an insured any person or organization (called additional insured) whom you (Morris) are required to add as an additional insured on this policy under a written contract or written agreement.

* * *

**b.    Excess Insurance**

This insurance is excess over:

Any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a written contract specifically

8

>requires that the insurance be either primary or primary and noncontributing. Where required by written contract, we will consider any other insurance maintained by the additional insured for injury or damage covered by this endorsement to be excess and noncontributing with this insurance.

* * *

40. Pursuant to the endorsement, West Bend has been providing Witcher a defense in the *Martin* suit, subject to a reservation of West Bend's rights. A copy of the endorsement is attached hereto as Exhibit G.

## APPLICABLE LAW

41. An actual controversy exists between the parties concerning whether insurance coverage is provided to Witcher by the United National policy for the *Martin* suit.

42. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court is granted the power to determine and adjudicate the rights and the obligations of the parties hereto.

## PRAYER FOR RELIEF

43. Witcher is entitled to additional insured status under the United National policy because, at the time of Mr. Martins' injury, Cybor was required by written contract or agreement to name Witcher as an additional insured; because the allegations of the *Martin* suit against Witcher left opened the possibility that Witcher's alleged liability to Martin, if any, will arise out of an act of omission of Cybor, in whole or in part; and because Witcher's defense and indemnity in the *Martin* suit was tendered to United National on a timely basis.

44. United National owed, and continues to owe, a duty to defend and indemnify Witcher in the *Martin* suit.

45. United National did not defend Witcher under a reservation of rights or promptly file a declaratory judgment action to determine its obligations under its policy with respect to Witcher's status as an additional insured.

46. Almost four years have passed since United National denied coverage to Witcher in the *Martin* suit and United National is estopped to deny indemnity to Witcher for it liability in the *Martin* suit, if any.

WHEREFORE, for the reasons set forth hereinabove, Plaintiffs pray that this court find and declare that United National owes Witcher a duty to defend and a duty to indemnify Witcher in the *Martin* suit, subject only to United National policy's limit of liability, for an award of their costs incurred herein and for such further relief as the court deems just.

## COUNT II – WEST BEND
## EQUITABLE ALLOCATION OF DEFENSE EXPENSES

### JURISDICTION

1. The Court has supplemental jurisdiction for the claim set forth in this Count pursuant to 28 U.S.C. 1367, in that the claim is so related to the claim set forth in Count I, which is within the original jurisdiction of the Court, that it forms part of the same case or controversy.

### VENUE

2. Venue is premised upon 28 U.S.C. §1391 in that a substantial part of the events or omissions giving rise to this suit in this District.

### STATEMENT OF CLAIM

3-46. West Bend repeats and realleges paragraphs 3 – 46 of Count I of this Complaint as and for Paragraphs 3 – 46 of this Count.

47.     Pursuant to Witcher's status as an additional insured on the policy that West Bend issued to Morris Excavating, West Bend has defended Witcher in the *Martin* suit, subject to a reservation of rights, and has thus far incurred defense costs in the sum of approximately $61,400.

48.     United National's duty to defend Witcher was triggered no later than March 1, 2004. United National has failed to honor its duty to defend to Witcher and is in breach of said duty.

49.     Because both United National's and West Bend's policies were triggered, and both provided primary insurance with a duty to defend to Witcher, the cost of defending Witcher in the *Martin* suit should be equitably allocated equally between them. On that basis, United National must reimburse West Bend the sum of $30,700, plus a 50% share of any further expenses that West Bend incurs in the defense of Witcher in the *Martin* suit.

**PRAYER FOR RELIEF**

WHEREFORE, for the reasons set forth hereinabove, West Bend prays that judgment be entered in its favor, and against United National, in the amount of $30,700, plus a 50% share of additional defense expenses incurred in the future, plus West Bend's costs incurred herein.

**COUNT III**
**WEST BEND – CONTRACTUAL SUBROGATION**

1-48.   West Bend repeats and realleges paragraphs 1 – 48 of Count II, as though fully set forth herein.

49.     West Bend's policy contained a "Transfer of Rights" condition which provided as follows:

11

    **8.**    **Transfer Of Rights Of Recovery Against Others To Us**

> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us.  The insured must do nothing after loss to impair them.  At you request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

50.     Pursuant to the "transfer of rights" condition, Witcher's rights against United National are transferred to West Bend.

51.     Based on United National's failure to defend Witcher, and the "transfer of rights" condition of its policy, West Bend is contractually subrogated to Witcher's rights against United National and, therefore, entitled to recover the sum of $30,700 from United National, plus a 50% share of any further expenses that West Bend incurs in the defense of Witcher in the *Martin* suit.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth hereinabove, West Bend prays that this Court enter judgment in its favor, and against United National, in the sum of $30,700, plus a 50% share of additional defense expenses incurred in the future, plus West Bend's costs incurred herein.                         Respectfully submitted,

                                                      WITCHER CONSTRUCTION COMPANY
                                                     WEST BEND MUTUAL INSURANCE CO.


                                                     By: s/Richard T. Valentino
                                                         One of Its Attorneys

Richard T. Valentino, Esq. (ARDC #6188317)
SmithAmundsen LLC
150 N. Michigan Avenue, Suite 3300
Chicago, IL 60601
Phone: (312) 894-3300
FAX:   (312) 894-3210