08 C 1245

JUDGE BUCKLO
MAGISTRATE JUDGE COLE

# EXHIBIT F



**united
national
group**®

United National Insurance Company®
Diamond State Insurance Company®
United National Specialty Insurance Company®
United National Casualty Insurance Company

Three Bala Plaza, East
Suite 300
Bala Cynwyd, PA 19004
Main: (610) 664-1500
Fax: (610) 660-8882
Claims: (610) 660-8877
www.unitednat.com

RECEIVED
MAR 2 2 2004

Stanley Doniger
Direct Line: 610-747-1046
Fax:          610-660-8885
E-Mail:  sdoniger@unitednat.com

March 17, 2004

**By Certified Mail – Return Receipt Requested
# 7000 1530 0000 5408 3334 and Facsimile**

George A Hesik, Esq.
George A Hesik & Associates, Inc.
Suite 436
625 Plainfield Road
Willowbrook, Illinois 60527

| | | |
|---|---|---|
| Re: | Our Insured: | **Cybor Fire Protection Company ("Cybor")** |
| | Claimant: | **Witcher Construction Company ("Witcher")** |
| | Policy No. | **L7156303** |
| | Claim No. | **040-0509-U** |
| | Date of Loss | **08/23/02** |

## COVERAGE DISCLAIMER

Dear Mr. Hesik:

    United National Insurance Company ("United") acknowledges receipt of an ACORD General Liability Notice of Occurrence/Claim dated 01/23/2004 (the "ACORD Notice"), attaching the Complaint in *William Martin v. Witcher Constr. Co.*, Civil Action No. 03L015944 (Cook County, Illinois) (the "Martin Action"), and your January 13, 2004 letter to Jon Crandal, which was forwarded to us, attaching a January 9, 2004 letter to you from Robert L. Smith demanding that Cybor defend and indemnify Witcher in connection with a lawsuit filed against Witcher by William Martin ("Underlying Claim"). We have also reviewed additional documents that you provided to us, in particular, documents relating to the subcontract which was entered into between Witcher and Cybor (the "Subcontract") with respect to the Best Buy property in Bollingbrook, Illinois.



EXHIBIT
F

This letter is to inform you that, based upon the facts as we now understand them, it appears that United has no duty to defend or indemnify Cybor in connection with the Underlying Claim, and, accordingly, hereby denies coverage for the claim. Accordingly, you should continue to take all steps necessary to protect its interests.

The following represents our understanding of the facts and the allegations relating to the Underlying Claim, and explains our coverage position. United's coverage position is based upon the information reviewed, and as further described below. To the extent Cybor has additional materials that it believes bear on coverage, please provide them. United expressly reserves the right to amend and modify its position based upon additional information that may be developed.

## I. **The Underlying Claim**

Cybor claims coverage for the Underlying Claim under United National policy number L7156303 (the "Policy"). The Policy is a commercial general liability ("CGL") policy issued to Global Fire Protection Company for the policy period of 05/28/2002 to 05/28/2003. Cybor claims as an additional named insured under the Policy. The Policy provides coverage, subject to and limited by the terms, conditions, and exclusions of the Policy, in the amount of $1 million per occurrence, with a $2 million aggregate. There is a $1,000 per-claim deductible under all coverages.

The Complaint was filed by William Martin on or about December 22, 2003. The Complaint names as the defendant Witcher Construction Company, a Minnesota corporation. Cybor is not named as a defendant. The Complaint alleges that Witcher was the general contractor engaged in construction of a commercial facility in Cook County, Illinois, and that on August 23, 2002, Martin was a foreman employed by Cybor to install the overhead sprinkling system. Complaint, ¶¶ 1-2. The Complaint further alleges that, "[i]n the performance of his work, plaintiff was required to traverse various job sites on foot to get to the various installation areas." Complaint, ¶ 3. According to the Complaint, on August 23, 2002, Martin was walking across an area where there were trenches covered with steel plates, which were not bolted down or secured, and the trenches were not otherwise covered. Complaint, ¶¶ 4-8. The Complaint lists 18 instances in which Witcher's conduct is alleged to be negligent, and led to the injury of Martin. It is our understanding that Witcher is defending that suit.

By letter dated January 9, 2004, Witcher demanded that Cybor defend and indemnify Witcher in connection with the Martin Action. Witcher's asserts that its claim against Cybor arises out of indemnification terms that were included in documents exchanged between the parties in connection with the Subcontract that was to govern Cybor's work on the Best Buy project. The Subcontract documents that you have provided, and the accompanying correspondence, indicate that although the work proceeded, the Subcontract documents were never signed by both parties. Our understanding of the chronology is as follows:

273

| 05/30/2002 | Best Buy selects Witcher Construction to be the general contractor in connection with construction of a store in Bolingbrook, Illinois. |
| 08/19/2002 | Witcher writes to Cybor informing it that it has been awarded the fire protection subcontract. The letter states the contract will be mailed that week. |
| 08/21/2002 | Witcher provides a proposed contract to Cybor. |
| 08/23/2002 | Martin is injured on the job site. |
| 08/30/2002 | By fax dated 08/30/2002, Cybor provides Witcher proposed changes to that agreement. In particular, as described in greater detail below, Cybor struck portions of the language from paragraph 7.2, which is the indemnification provision under which Witcher is now claiming indemnification from Cybor, and made corresponding changes to portions of Exhibit A, a rider addressing indemnification, among other changes. |
| 12/17/2002 | Witcher overnighted three more copies of the contract to Cybor with a request that they be executed. That letter states "any modification may invalidate the contracts and cause further delay. Upon receipt of the contracts and items checked below, we will sign the contracts and return one copy for your files. Please return all contracts by December 20, 2002." |
| 12/18/2002 | The President of Cybor signed the agreement, as modified by Cybor. |
| 01/09/2003 | Witcher again requests copies of the signed agreements, sending a verbatim copy of the letter dated December 17, 2002. |

Witcher's January 9, 2004 demand letter takes the position that despite the fact that the Subcontract was not signed, "a contract was formed when Cybor began its work, and the terms of the contract are those which were proposed by Cybor on August 30, 2002, when Cybor returned Witcher's proposed subcontract with suggested revisions." Witcher maintains that the indemnification provisions as modified by Cybor when the draft contract was returned as signed by Cybor's president on or about December 18, 2002, became part of the contract between the parties. Those provisions provide as follows, including the strikeouts made by Cybor prior to returning the documents to Witcher:

RECORD COPY SERVICES

Article 7.2. The Subcontractor agrees to assume entire responsibility and liability, to the fullest extent permitted by law, for all damages or injury to all persons, whether employees or otherwise, and to all property, arising out of it, resulting from or in any manner connected with, the execution of the work provided for in this Subcontract or occurring or resulting from the use by the Subcontractor, its agents or employees, of materials equipment, instrumentalities or other property, whether the same be owned by the Contractor, the Subcontractor or third parties. Further the Subcontractor, to the fullest extend permitted by law, agrees to indemnify and same harmless the Contractor, its agents and employees from all such claims ~~including, without limiting the generality of the foregoing, claims for which the Contractor may be or may claimed to be liable and legal fees and disbursements paid or incurred to enforce the provisions of this paragraph~~. The Subcontractor further agrees to obtain, maintain and pay for such Commercial General Liability insurance coverage and endorsements as will insure the provisions of this paragraph.

Exhibit A. <u>INDEMNIFICATION:</u> * * * To the fullest extent permitted by law, the Subcontractor shall defend, indemnify, and hold harmless the Contractor, the Owner, the Architect/Engineer, the agents and employees of each of them, and any other person or entity designated as an indemnified party in the Contract Documents (collectively the "Indemnified Parties") from and against:

1. all Claims to the same extent as Contractor must defend, indemnify and hold harmless the Owner and other Indemnified parties pursuant to the Contract Documents;

2. all Claims arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of the Subcontractor, or anyone directly or indirectly employed by them or anyone for whose acts they may be liable, ~~regardless of whether or not such a claim, damage, loss or expense is caused in part by a party indemnified hereunder; and~~

275

3. all Claims arising out of or resulting form Subcontractor's Work, regardless of whether the Claims are caused by the acts, error, omissions, negligence of the Subcontractor or its subsubcontractors or suppliers of any tier or anyone directly employed by them or anyone for whose acts they may be liable ~~regardless of whether the Claims are caused in whole or in part by one of the Indemnified Parties.~~

Witcher further contends that "even with the modifications made by Cybor, the agreed-upon provisions of the subcontract still requires Cybor to indemnify Witcher from all claims 'arising out of or resulting from' Cybor's work regardless of whether the claims were caused by the acts, error, omissions, negligence of Cybor." Accordingly, Witcher contends that "Cybor owes Witcher a duty to defend and indemnify Witcher against Mr. Martin's claims."

In addition to the foregoing, review of the documents also indicates that Mr. Martin has made a worker's compensation claim against Cybor, and that Cybor has sued Witcher for breach of contract. We previously requested copies of documents relating to the lawsuit apparently alleged to have been filed by Cybor against Witcher, and hereby renew that request. In addition, please provide copies of the substantive documents relating to the worker's compensation claim.

## II. Discussion and Full Reservation of Rights

Review of the information you have provided raises serious questions as to coverage. Accordingly, for at least the reasons set forth below, it appears that coverage is not provided or is excluded under the above-referenced Policy. Accordingly, United hereby reserves all of its rights to disclaim coverage for the Underlying Claim.

**A.     No "Suit"**

Under the insuring agreement, the Policy provides in relevant part as follows:

**COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY.**

**1.  Insurance Agreement.**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. . . .

The Policy defines the term "suit," in relevant part, as a "civil proceeding in which damages because of 'bodily injury', 'property damage', 'personal injury' or 'advertising injury' to which this insurance applies are alleged." The term also includes mandatory arbitration proceedings, or arbitration proceedings or other alternative dispute resolution proceedings to which the insured submits with United's consent. Accordingly, the Policy applies only to damages that the insured becomes legally obligated to pay as damages sought in a "suit" against the insured seeking those damages. The materials you have provided indicate that no suit has been filed against Cybor.

**B.    Timely Notice and Occurrence, Offense, Claim or Suit**

The Policy provides as a condition precedent to coverage that the insured provide timely notice of "an occurrence" or an offense which may result in a claim, and to immediately notify United if a "suit" is brought against any insured. The Policy states in relevant part as follows:

> **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**
>
> * * *
>
> **2.  Duties In The Event Of Occurrence, Offense, Claim Or Suit**
>
> a.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
> > (1) How, when and where the "occurrence" or offense took place;
> >
> > (2) The names and addresses of any injured persons and witnesses; and
> >
> > (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
> b.  If a claim is made or "suit" is brought against any insured, you must:
>
> > (1) Immediately record the specifics of the claim or "suit" and the date received; and
> >
> > (2) Notify us as soon as practicable.

277

* * *

The materials that you provided indicate that Mr. Martin was injured on the job site on August 23, 2002. United's first notice of the occurrence was the ACORD Notice dated 01/23/2004.

C.     **Exclusion for Bodily Injury to An Employee of the Insured**

The Policy provides that "[t]his insurance does not apply to . . . [a]ny obligation of the insured under a worker's compensation, disability benefits or unemployment compensation law or any similar law." Coverage A, Exclusion 2.d. The materials you provided indicate that Mr. Martin was an employee of Cybor, and that he has claimed worker's compensation benefits.

D.     **Employer's Liability Exclusion**

Exclusion E to the policy provides as follows:

2.     **Exclusions**

This insurance does not apply to:

* * *

e.    **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusions applies:

(1) Whether the insured may be liable as an employee or in any other capacity; and

278

March 17, 2004
Page 8

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury

Mr. Martin is an employee of the insured, triggering this exclusion, unless otherwise excepted.

E.    **Contractual Liability Exclusion**

The materials you have provided indicate that Witcher is demanding defense and indemnification from Cybor based upon indemnification provisions that Wither alleges were part of the Subcontract between Witcher and Cybor. The Policy contains an exclusion for contractual liability, which is subject to two exceptions as follows:

This insurance does not apply to:

* * *

b.    **Contractual Liability.**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

(2)    That the insured would have in the absence of the contract or agreement.

As to the first exception, Witcher's claim is based on contract, and, therefore, the second exception does not apply. "Insured contract" is defined under Section V-Definitions, Definition 8. There are a number of subparts to this definition which are not repeated here, which include such things as sidetrack agreements, leases, and elevator maintenance agreements. Based on the facts, the potentially relevant section of that definition is Subpart f, relating to indemnification agreements:

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.

279

Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.[1]

To fall within this exception, the liability must be assumed under a contract or agreement that is: (1) an "insured contract"; and (2) the bodily injury or property damage must occur "subsequent to the execution of the contract or agreement." As an initial matter, we note that the contract was never signed by the parties, and that when Cybor provided its signed version of the contract to Witcher, Cybor made modifications that were not part of the document as sent to it by Witcher. These facts raise an initial issue as to whether this written contract governs. Even accepting the allegation by Witcher that the written contract is enforceable and contains those terms which Cybor modified and sent to Witcher on or about December 18, 2002, there was no contract containing that indemnification provision that was executed prior to the date on which Mr. Martin was injured. Rather, Cybor rejected the terms and proposed modified language after the injury occurred. As set forth above, the exception to the exclusion for contractual liability relates to liability for damages "assumed in a contract or agreement that is an 'insured contract' *provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement . . .."* (Emphasis added.) The materials further indicate that as of the time of your communications to United, Witcher continued to demand that Cybor "execute" the contract. In any event, whether or not the contract was "executed" at any point, there was no contract containing the indemnification provisions under which Witcher is claiming coverage prior to the time of the bodily injury, because there was undisputedly no agreement on an indemnification term at that time.

**F.**    **<u>Obligations Assumed in Violation of Public Policy</u>**

In addition, although Witcher's demand letter asserts that the indemnification provisions in the contract would extend to Mr. Martin's claim against Witcher, it is United's understanding that by statute in Illinois, agreements that purport to indemnify or hold harmless another from that person's own negligence are void on public policy grounds. The Illinois statute known as the Construction Contracts Indemnification for Negligence Act provides as follows:

> With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a build-ing, structure, highway bridge, viaduct, or other work dealing with construction, or for any moving, demolition, or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.

---

[1] There are some exceptions to Subpart f, including architects, engineers, and railroads.

March 17, 2004
Page 10

740 ILCS 35. It thus would appear that to the extent that the contract was intended to indemnify Witcher for its own negligence, it would not be enforceable in Illinois. If Cybor contends that this statute would not apply in this manner to insulate Cybor from Witcher's claim, United would be willing to review this issue with you.

## G.    Contractual Liability Limitation

In addition, by endorsement to the Policy, the definition of "insured contract" was modified to exclude from the definition "any contract or agreement that indemnifies any person or organization for liability arising out of his or its sole negligence." As set forth above, Mr. Martin has named only Witcher in the Martin Action, and alleges that Witcher's negligence was responsible for his injuries.

## H.    No Coverage for Obligations Voluntarily Assumed

As set forth above, the Policy provides coverage, subject to and limited by the terms, conditions, and exclusions of the Policy, only for sums which the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which the insurance applies. There would be no coverage for costs or liabilities voluntarily assumed.

## I.    Duty to Cooperate

The Policy requires, as a condition precedent to coverage, that the insured cooperate with United in its investigation, settlement, or defense.

### III.  Conclusion

For at least the reasons set forth above, United hereby informs you that the claim is not covered under the Policy. By reviewing this matter, including our review of the materials you have provided or may provide, United does not waive the right to disclaim coverage on the same or additional grounds. Nothing in this letter is intended to be, nor should it be construed as, a waiver of any rights United may have under the policy or applicable law. United hereby reserves all of its rights with respect to this claim.

United expressly informs you that we are willing to re-evaluate our position based upon review of any additional facts and/or legal authority. To the extent you believe you have additional materials that may bear on coverage, we ask that you forward these to United for additional review and consideration.

UNITED NATIONAL INSURANCE CO.

Stanley Doniger
Claims Examiner

281

cc: Paula Brewis
    All Risk Limited-Security Guard
    1920 Greenspring Drive Suite 200
    Timonium, MD 21093

    G A Crandall & Co. Inc.
    6851 West 167th Street
    Tinley Park, IL 60477

    Dave Baron
    Cybor Fire Protection
    5123 Thatcher Road
    Downers Grove, IL 60515