2045006IK7/aw                                                             Attorney I.D. #36677

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| WITCHER CONSTRUCTION COMPANY, a Minnesota corporation, and WEST BEND MUTUAL INSURANCE COMPANY, a Wisconsin corporation,<br><br>                Plaintiffs,<br>v.<br><br>UNITED NATIONAL INSURANCE COMPANY, a Pennsylvania corporation,<br><br>                Defendant. | No. 08 C 1245<br><br>Judge Bucklo<br>Magistrate Judge Cole |

### UNITED NATIONAL INSURANCE COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

NOW COMES Defendant, UNITED NATIONAL INSURANCE COMPANY ("United National"), by and through its attorneys, CRAY HUBER HORSTMAN HEIL & VanAUSDAL LLC, and as its Answer to Plaintiffs' Complaint for Declaratory Judgment and Other Relief, states as follows:

### COUNT I
### WITCHER AND WEST BEND – DECLARATORY JUDGMENT

#### JURISDICTION

1.      The jurisdiction of the Court is premised upon 28 U.S.C. §1332 in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

    **ANSWER:**   United National is without knowledge or information sufficient to answer the allegations in paragraph 1, and therefore denies same.

## VENUE

2. Venue is premised upon 28 U.S.C. §1391 in that a substantial part of the events or omissions giving rise to this suit occurred in this District.

**ANSWER:** United National is without knowledge or information sufficient to answer the allegations in paragraph 2, and therefore denies same.

## THE PARTIES

3. At all times relevant hereto, Witcher was a Minnesota corporation, with its principal place of business located in Eden Prairie, Minnesota. Witcher was a contractor at a Best Buy construction project in Bolingbrook, Illinois at which William Martin was injured, leading to the filing of the *Martin* suit, described below.

**ANSWER:** United National is without knowledge or information sufficient to answer the allegations in paragraph 3, and therefore denies same.

4. At all times relevant hereto, West Bend was a Wisconsin corporation, with its principal place of business located in West Bend, Wisconsin. West Bend issued a certain policy of liability insurance to its named insured, Morris Excavating Co., Pol. No. CPC 0312529, effective 8/15/02 to 8/15/03. Witcher is an additional insured on the West Bend policy, subject to the West Bend policies' terms and conditions. West Bend has provided, and continues to provide, Witcher with a defense in the *Martin* suit, subject to a reservation of rights.

**ANSWER:** United National is without knowledge or information sufficient to answer the allegations in paragraph 4, and therefore denies same.

5. At all times relevant hereto, United National was a Pennsylvania corporation, with its principal place of business located in Bala Cynwyd, Pennsylvania. United National issued a policy of liability insurance to its named insured, Global Fire Protection Company, which later became known as Cybor Fire Protection Co. ("Cybor"), a corporation whose

2

principal office, at all times relevant hereto, was located in Downers Grove, Illinois. Witcher asserts that it is an additional insured on the United National Policy, but United National has denied coverage to Witcher.

> **ANSWER:** United National admits it is a Pennsylvania corporation, with its principle place of business located in Bala Cynwyd, Pennsylvania. Additionally, United National admits that it issued a policy of liability insurance to Global Fire Protection Company. United National is without knowledge or information sufficient to answer the remaining allegations in paragraph 5, and therefore denies same.

### THE *MARTIN* SUIT

6. On December 22, 2003, William Martin filed a Complaint at Law against Witcher in the Circuit Court of Cook County, Illinois, Law Division, Court No. 03 L 15944 (the "*Martin* suit"). A copy of the Complaint filed in the *Martin* suit is attached hereto as Exhibit A.

> **ANSWER:** United National admits the allegations in paragraph 6.

7. The Complaint in the *Martin* suit alleges that Martin was a foreman employed by Cybor to install an overhead sprinkler system at a Best Buy store being constructed in Bolingbrook, Illinois.

> **ANSWER:** United National states that the complaint in the underlying *Martin* action speaks for itself.

8. The Complaint in the *Martin* suit alleges that Witcher was the general contractor at the Best Buy project.

> **ANSWER:** United National states that the complaint in the underlying *Martin* action speaks for itself.

9. The Complaint in the *Martin* suit alleges that on August 23, 2002 Mr. Martin was injured while walking across a metal plate covering a trench for electrical equipment. Allegedly, one of the metal plates slipped forward, causing his left foot to fall into the trench and his ankle and heel to be injured by a piece of iron.

3

> **ANSWER:** United National states that the complaint in the underlying *Martin* action speaks for itself.

10. The Complaint in the *Martin* suit alleges that Witcher was negligent by committing one or more negligent acts or omissions, including but not limited to the following:

   d. Failed to appropriately <u>monitor the subcontractors</u> to insure that (they) conducted weekly "tool box meetings" to provide their employees with up-to-date safety information in violation of industry standards jobsite safety procedures;

   e. Failed to <u>insure that the daily business operations of the subcontractors were being conducted in a reasonably safe manner</u> in violation of industry standard jobsite safety procedures;

   f. Failed to initiate and/or participate in periodic inspection tours and <u>failed to insure that the subcontractors initiated and/or participated in periodic inspection</u> tours of the work site, in violation of industry standard jobsite safety procedures; (Underline supplied.)

   > **ANSWER:** United National states that the complaint in the underlying *Martin* action speaks for itself.

11. The Complaint in the *Martin* suit alleges that as a proximate result of Witcher's negligence Martin sustained damages in excess of $50,000.

   > **ANSWER:** United National states that the complaint in the underlying *Martin* action speaks for itself.

12. Witcher denies liability for Mr. Martin's injuries and brings this suit without prejudice to said denial.

   > **ANSWER:** United National is without knowledge or information sufficient to answer the allegations in paragraph 12, and therefore denies same.

### THE WITCHER/CYBOR SUBCONTRACT

13. Witcher issued an "Invitation to Bid" for work at the Best Buy project to potential subcontractors, including Cybor, on July 19, 2002.

   > **ANSWER:** United National is without knowledge or information sufficient to answer the allegations in paragraph 13, and therefore denies same.

14.     Cybor submitted a proposal to Witcher for work at Best Buy (in the sum of $55,900) on July 23, 2002.

**ANSWER:**     United National is without knowledge or information sufficient to answer the allegations in paragraph 14, and therefore denies same.

15.     On August 9, 2002, Witcher informed Cybor that it was a low bidder for work at the Best Buy project.

**ANSWER:**     United National is without knowledge or information sufficient to answer the allegations in paragraph 15, and therefore denies same.

16.     On August 15, 2002, Cybor faxed "submittals" to Witcher.

**ANSWER:**     United National is without knowledge or information sufficient to answer the allegations in paragraph 16, and therefore denies same.

17.     On August 19, 2002, Witcher informed Cybor that it had been awarded the fire protection contract for the Best Buy project.

**ANSWER:**     United National is without knowledge or information sufficient to answer the allegations in paragraph 17, and therefore denies same.

18.     On August 20, 2002, Cybor began working at the Best Buy project.

**ANSWER:**     United National is without knowledge or information sufficient to answer the allegations in paragraph 18, and therefore denies same.

19.     On August 21, 2002, Cybor received a copy of the subcontract for its work from Witcher. A copy of the subcontract is attached hereto and labeled Exhibit B.

**ANSWER:**     United National is without knowledge or information sufficient to answer the allegations in paragraph 19, and therefore denies same.

20.     The subcontract between Witcher and Cybor states that it was "made this 21st day of August, 2002," and that it is executed "the day and year first written above."

**ANSWER:**     United National states that the subcontract between Witcher and Cybor speaks for itself. However, United National denies that the subcontract between Witcher and Cybor was executed on August 21, 2002.

21.     Article 7.1 of the subcontract required Cybor to obtain commercial general liability insurance with "per occurrence" limits of at least $500,000 and excess/umbrella limits of at least $1 million and to name Witcher as an additional insured.

**ANSWER:**  United National states that the subcontract between Witcher and Cybor speaks for itself.

22.     The subcontract included a Rider with "Insurance" requirements, including, on page 7, a requirement that "the insurance afforded to the additional insureds on (Cybor's) CGL policy shall be primary insurance over any other valid or collectible insurance that the additional insureds may have with respect to loss under the policy and other insurance of additional insureds applicable to the loss shall be excess over (Cybor's) policies…"

**ANSWER:**  United National states that the subcontract between Witcher and Cybor speaks for itself.

### THE UNITED NATIONAL POLICY AND CERTIFICATE OF INSURANCE

23.     United National issued policy no. L7156303 to "Global Fire Protection Company," with an effective period of May 28, 2002 to May 28, 2003. The United National policy had a general aggregate limit of $2 million and an "each occurrence" limit of $1 million. A copy of the United National Policy's declarations and Endorsement No. 1 are attached hereto as Exhibit C.

**ANSWER:**  United National admits the allegations in paragraph 23.

24.     The Declarations of the United National policy reflect that it includes "blanket additional insured coverage," Form ARF 5536, the terms of which, on information and belief, were set forth by United National in its "Coverage Disclaimer" letter, described below.

**ANSWER:**  United National states that the declarations section of the United National policy speaks for itself, as does United National's "Coverage Disclaimer" letter.

6

25.     The United National policy's Insuring Agreement provides in relevant part that United National will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to which the insurance applies, and that United National has the duty to defend any "suit" seeking those damages.

**ANSWER:**    United National states that the United National policy speaks for itself.

26.     The United National policy included, in Endorsement No. 1, the following terms:

> In consideration of the premium charged, it is hereby understood and agreed that the following primary wording will be provided:
>
> The insurance afforded is primary and non-contributory insurance. If the insurance afforded is applicable to a loss on an excess, contingent, or primary basis, the amount of the company's liability under this policy shall not be reduced by the existence of other insurance.

**ANSWER:**    United National states that the United National policy speaks for itself.

27.     On or about August 28, 2002, Witcher was provided with a certificate of insurance by Cybor's insurance producer, showing Witcher as an additional insured on the United National policy. A copy of the Certificate is attached hereto and labeled Exhibit D.

**ANSWER:**    United National is without knowledge or information sufficient to answer the allegations in paragraph 27, and therefore denies same.

28.     The certificate included an attachment stating that Witcher is an additional insured and further stating that:

> General liability endorsement ARF 1048 provides additional insured coverage for those required by written contract or agreement.
>
> Additional insured pertaining to (CGL) solely with respect to liability arising out of the named insured's operations.

**ANSWER:**    United National is without knowledge or information sufficient to answer the allegations in paragraph 28, and therefore denies same.

7

## TENDER OF THE *MARTIN* SUIT TO UNITED NATIONAL

29.  By letter dated February 26, 2004, Witcher's defense and indemnity in the *Martin* suit was tendered to Cybor, with a copy of the tender materials also sent to United National.

**ANSWER:**   United National admits the allegations in paragraph 29.

## UNITED NATIONAL'S COVERAGE DISCLAIMER

30.  On March 17, 2004, United National denied coverage to Witcher in a "Coverage Disclaimer" letter, a copy of which is attached hereto as Exhibit E.

**ANSWER:**   United National admits the allegations in paragraph 30.

31.  United National's March 17, 2004 "Coverage Disclaimer" letter set forth the purported terms of its policy's additional insured endorsement as follows:

> WHO IS AN INSURED . . . is amended to include the person or organization shown in the Schedule below, but only as respects liability imposed or sought to be imposed on such additional insured because of an alleged act or omission of the named insured.
>
> 1.  If liability for injury or damage is imposed or sought to be imposed on the additional insured because of:
>
>     a.  Its own acts or omissions, this insurance does not apply;
>
>     b.  Its acts or omissions and those of the named insured, as to defense of the additional insured, in proportion to the limits of liability of all involved parties, and the Other Insurance provisions of this policy . . . are amended accordingly.  However, this insurance does not apply to indemnity of the additional insured for its own acts or omissions.
>
> 2.  If an agreement between the named insured and the additional insured providing indemnity or contribution in favor of the additional insured exists

8

>or is alleged to exist, the extent and scope of coverage under this insurance for the additional insured <u>will be no greater than the extent and scope of indemnification of the additional insured which was agreed to by the named insured</u>.  (Underline supplied.)

* * *

**ANSWER:**  United National states that the March 17, 2004 "Coverage Disclaimer" letter speaks for itself.

32. The "Schedule below" referenced in the endorsement is not set forth in the "Coverage Disclaimer" letter.  However, on information and belief, the "Schedule below" states "those required by written contract or agreement."

**ANSWER:**  United National states that the March 17, 2004 "Coverage Disclaimer" letter speaks for itself.  As to the second sentence of paragraph 32 concerning Witcher's "information and belief," United National is without knowledge or information sufficient to answer such allegation, and therefore denies same.

33. United National's "Coverage Disclaimer" asserted there were "serious issues" as to whether there was a subcontract agreement whereby Cybor agreed to provide additional insured coverage to Witcher.

**ANSWER:**  United National states that the March 17, 2004 "Coverage Disclaimer" letter speaks for itself.

34. United National's "Coverage Disclaimer" letter also asserted that its additional insured endorsement did not provide coverage to Witcher because the *Martin* suit sought to impose liability on Witcher based on Witcher's own acts or omissions, rather than those of Cybor, and that coverage was otherwise barred by the terms of the endorsement.

**ANSWER:**  United National states that the March 17, 2004 "Coverage Disclaimer" letter speaks for itself.

35. United National's "Coverage Disclaimer" letter asserted that Witcher breached the United National policy's notice conditions.

**ANSWER:** United National states that the March 17, 2004 "Coverage Disclaimer" letter speaks for itself.

36. On March 17, 2004, United National also sent a "Coverage Disclaimer" letter to an attorney for Cybor, a coy of which is attached as Exhibit F. This letter reflects that, at its request, United National had been provided with documents and information by Cybor.

**ANSWER:** United National admits that it sent a March 17, 2004 "Coverage Disclaimer" letter to counsel for Cybor. United National states that this March 17, 2004 letter speaks for itself.

37. United National's Coverage Disclaimer letter to Cybor reflected United's awareness that Cybor was provided with a written contract by Witcher on August 21, 2002, prior to the time of Mr. Martin's injury.

**ANSWER:** United National denies the allegations in paragraph 37.

### THE WEST BEND ADDITIONAL INSURED ENDORSEMENT

38. West Bend issued policy no. CPC0312529 to "Morris Excavating, Inc.," with an effective period of August 15, 2002 to August 15, 2003.

**ANSWER:** United National is without knowledge or information sufficient to answer the allegations in paragraph 38, and therefore denies same.

39. The West Bend policy included an endorsement entitled "Additional Insured – Contractor's Blanket" which provide in relevant part as follows:

> **A.** **WHO IS AN INSURED (Section II)** is amended to include as an insured any person or organization (called additional insured) whom you (Morris) are required to add as an additional insured on this policy under a written contract or written agreement.

\* \* \*

10

      **b.**    **Excess Insurance**
This insurance is excess over:

> Any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a written contract specifically requires that the insurance be either primary or primary and noncontributing. Where required by written contract, we will consider any other insurance maintained by the additional insured for injury or damage covered by this endorsement to be excess and noncontributing with this insurance.

* * *

**ANSWER:**    United National is without knowledge or information sufficient to answer the allegations in paragraph 39, and therefore denies same.

40.     Pursuant to the endorsement, West Bend has been providing Witcher a defense in the *Martin* suit, subject to a reservation of West Bend's rights. A copy of the endorsement is attached hereto as Exhibit G.

**ANSWER:**    United National is without knowledge or information sufficient to answer the allegations in paragraph 40, and therefore denies same.

**APPLICABLE LAW**

41.     An actual controversy exists between the parties concerning whether insurance coverage is provided to Witcher by the United National policy for the *Martin* suit.

**ANSWER:**    This paragraph contains a legal conclusion which United National is unable to admit, and therefore denies.

42.     Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court is granted the power to determine and adjudicate the rights and the obligations of the parties hereto.

**ANSWER:**    This paragraph contains a legal conclusion which United National is unable to admit, and therefore denies.

**PRAYER FOR RELIEF**

43. Witcher is entitled to additional insured status under the United National policy because, at the time of Mr. Martin's injury, Cybor was required by written contract or agreement to name Witcher as an additional insured; because the allegations of the *Martin* suit against Witcher left opened the possibility that Witcher's alleged liability to Martin, if any, will arise out of an act of omission of Cybor, in whole or in part; and because Witcher's defense and indemnity in the *Martin* suit was tendered to United National on a timely basis.

    **ANSWER:**    United National denies the allegations in paragraph 43.

44. United National owed, and continues to owe, a duty to defend and indemnify Witcher in the *Martin* suit.

    **ANSWER:**    United National denies the allegations in paragraph 44.

45. United National did not defend Witcher under a reservation of rights or promptly file a declaratory judgment action to determine its obligations under its policy with respect to Witcher's status as an additional insured.

    **ANSWER:**    United National admits that it did not defend Witcher under a reservation of rights. United National denies the remaining allegations of this paragraph.

46. Almost four years have passed since United National denied coverage to Witcher in the *Martin* suit and United National is estopped to deny indemnity to Witcher for its liability in the *Martin* suit, if any.

    **ANSWER:**    United National admits that it denied coverage to Witcher for the underlying *Martin* suit on or about March 17, 2004. The remaining allegations in this paragraph contain legal conclusions which United National is unable to admit, and therefore denies.

WHEREFORE, for the reasons set forth hereinabove, Plaintiffs pray that this court find and declare that United National owes Witcher a duty to defend and a duty to indemnify Witcher in the *Martin* suit, subject only to United National policy's limit of liability, for an award of their costs incurred herein and for such further relief as the court deems just.

**ANSWER:** United National denies that Plaintiffs are entitled to any of the relief sought in Count I of their Complaint.

### COUNT II – WEST BEND
### EQUITABLE ALLOCATION OF DEFENSE EXPENSES

#### JURISDICTION

1. The Court has supplemental jurisdiction for the claim set forth in this Count pursuant to 28 U.S.C. 1367, in that the claim is so related to the claim set forth in Count I, which is within the original jurisdiction of the Court, that it forms part of the same case or controversy.

**ANSWER:** This paragraph contains a legal conclusion which United National is unable to admit, and therefore denies.

#### VENUE

2. Venue is premised upon 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to this suit in this District.

**ANSWER:** United National is without knowledge or information sufficient to answer the allegations in paragraph 2, and therefore denies same.

#### STATEMENT OF CLAIM

3-46. West Bend repeats and realleges paragraphs 3 – 46 of Count I of this Complaint as and for paragraphs 3 – 46 of this Count.

**ANSWER:** United National incorporates its responses to paragraphs 33-46 of Count I.

47. Pursuant to Witcher's status as an additional insured on the policy that West Bend issued to Morris Excavating, West Bend has defended Witcher in the *Martin* suit, subject to a

reservation of rights, and has thus far incurred defense costs in the sum of approximately $61,400.

> **ANSWER:** United National is without knowledge or information sufficient to answer the allegations in paragraph 47, and therefore denies same.

48. United National's duty to defend Witcher was triggered no later than March 1, 2004. United National has failed to honor its duty to defend to Witcher and is in breach of said duty.

> **ANSWER:** United National denies the allegations in paragraph 48.

49. Because both United National's and West Bend's policies were triggered, and both provided primary insurance with a duty to defend to Witcher, the cost of defending Witcher in the *Martin* suit should be equitably allocated equally between them. On that basis, United National must reimburse West Bend the sum of $30,700, plus a 50% share of any further expenses that West Bend incurs in the defense of Witcher in the *Martin* suit.

> **ANSWER:** United National denies the allegations in paragraph 49.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth hereinabove, West Bend prays that judgment be entered in its favor, and against United National, in the amount of $30,700, plus a 50% share of additional defense expenses incurred in the future, plus West Bend's costs incurred herein.

> **ANSWER:** United National denies that Plaintiffs are entitled to any of the relief sought in Count II of their Complaint.

## COUNT III
## WEST BEND – CONTRACTUAL SUBROGATION

1-48. West Bend repeats and realleges paragraphs 1 – 48 of Count II, as though fully set forth herein.

> **ANSWER:** United National incorporates its responses to paragraphs 1-48 of Count II.

14

49. West Bend's policy contained a "Transfer of Rights" condition which provided as follows:

> 8. **Transfer Of Rights Of Recovery Against Others To Us**
>
> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At your request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**ANSWER:** United National is without knowledge or information sufficient to answer the allegations in paragraph 49, and therefore denies same.

50. Pursuant to the "transfer of rights" condition, Witcher's rights against United National are transferred to West Bend.

**ANSWER:** United National is without knowledge or information sufficient to answer the allegations in paragraph 50, and therefore denies same.

51. Based on United National's failure to defend Witcher, and the "transfer of rights" condition of its policy, West Bend is contractually subrogated to Witcher's rights against United National and, therefore, entitled to recover the sum of $30,700 from United National, plus a 50% share of any further expenses that West Bend incurs in the defense of Witcher in the *Martin* suit.

**ANSWER:** United National denies the allegations in paragraph 51.

### PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth hereinabove, West Bend prays that this court enter judgment in its favor, and against United National, in the amount of $30,700, plus a 50% share of additional defense expenses incurred in the future, plus West Bend's costs incurred herein.

**ANSWER:**   United National denies that Plaintiffs are entitled to any of the relief sought in Count III of their Complaint.

Respectfully submitted,

By: <u>s/James K. Horstman</u>
James K. Horstman,
Attorney for
UNITED NATIONAL INSURANCE COMPANY

James K. Horstman (ARDC # 3127202)
Mark A. Hooper (ARDC #6287773)
Cray Huber Horstman Heil & VanAusdal LLC
303 West Madison, Suite 2200
Chicago, IL  60606
(312) 332-8450
(312) 332-8451
jkh@crayhuber.com
mah@crayhuber.com
www.crayhuber.com

**CERTIFICATE OF SERVICE**

I hereby certify that on **April 8, 2008**, I electronically filed the attached **United National Insurance Company's Answer to Complaint for Declaratory Judgment and Other Relief** with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to all attorneys of record.

By: <u>s/James K. Horstman</u>
James K. Horstman